UNIVERSAL TALKING MACH. CO. v. KEEN et al.

(Circuit Court, E. D. Pennsylvania. March 24, 1905.)

No. 32.

CONTEMPT OF COURT—VIOLATION OF INJUNCTION—EVIDENCE CONSIDERED.

Evidence considered, and *held* to establish a contempt of court by defendants by selling and offering for sale large numbers of talking machine records, which they had on hand at the time of the granting and service of a preliminary injunction restraining such sale, and in violation of such injunction.

In Equity. Rule on defendants to show cause why they should not be adjudged in contempt.

Horace Petit, for complainants.

A. B. Stoughton, for defendants.

ARCHBALD, District Judge.* At the time the present suit was brought the defendants admittedly had on hand about 15,000 talking machine discs or records, impressed with the complainants' trade-mark "Zon-o-phone," which they were offering for sale at about one-half the price sought to be maintained for them by the complainants. The right to sell was attempted to be justified by a purchase from H. A. Caesar & Co. of New York, who had obtained them in turn from the

* Specially assigned.

Auburn Button Works, by whom they had been manufactured for the complainants. It was shown, however, that the Auburn Button Works had not lived up to their contract, and that the records were put upon the market by Caesar & Co., as their agents, without the sanction of the complainants and in disregard of their rights. Under the circumstances a preliminary injunction was awarded, which went out and was served December 23, 1903. It is contended by the complainants that this injunction has been violated, and the present proceedings have been taken in consequence to punish the defendants for the contempt. Whether the injunction was rightly issued or not, the defendants were bound to respect it, and the only question is whether they have, which depends upon the showing which has been made.

It appears by the affidavit of Edward W. Vaill, Jr., a member of the bar of this court, that on February 13, 1904, he visited the defendants' store at No. 156 North Eighth street, Philadelphia, and purchased from the party in charge a talking machine disc or record, which is produced and put in evidence, and upon which as it originally stood was marked in plain sight on its face, in impressed letters, the words: "Zon-o-phone Record, National Gram-o-phone Corp. All rights reserved"—from which, however, as it was when purchased, the syllable "Zon" had been scratched out. According to Mr. Vaill there were a large number of other similar records in the same condition lying on a table in the store, exposed for sale, and also a large number, having simply the words: "Zon-o-phone Record. All rights reserved"— with the name of the tune or selection, both in white lettering without erasure, on the shelves, in uncovered boxes at the side of the store, and in the window, in full view and within easy reach, apparently arranged for sale. The same day he visited the store at No. 251 North Ninth street, which was leased to Benjamin Futernik, one of the defendants, and purchased a "Zon-o-phone" record like the one last described, from among a number which were displayed in the window and in the rear of the store, where a talking machine business was carried on.

The defendants in their answer to the rule to show cause deny that they have sold or permitted to be sold any records "in infringement of the alleged rights of the complainants," and further specifically aver that they have refused to sell the records which they had at the time the injunction was served upon them, although they have been frequently solicited to do so, and that they still remain undisposed of, and have simply been removed from the center table to one side of the store and piled on the floor, where they remain covered over with paper. They further explain that it is part of their business to exchange records, a thousand of which pass through their hands in this way in a week, those which are so received being placed on a table in the center of the store for exchange or sale; that while they have taken every precaution not to accept any "Zon-o-phone" records on exchange—all of them being first tried in a talking machine—if those which were presented for exchange did not happen to announce the word "Zon-o-phone," upon being so tried, as all "Zon-o-phone" records are supposed to do, they might be accepted through inadvertence; and that, if records of this kind were purchased at the Eighth street store by representatives

of the complainants as alleged, they must have been sold from the exchange table, after being taken in, in the way described, in the exact condition in which they now are. Nor are records so exchanged and sold, as they maintain, an infringement of the complainants' rights.

As to the store on Ninth street, they deny that they control, operate, or have anything to do with it, in proof of which it is testified by Benjamin Futernik, one of the defendants, who leased the store from W. H. Heiss, the owner, in May, 1903, that while he and David Keen, another of the defendants, carried on business there prior to October 11, 1903, a fire ocurred on that day, after which he sublet the front part of the store to his father for a cigar business, and the back part to one Benjamin Switky, who carried on a talking machine business there. Leases to this effect are produced, signed by the parties named, bearing date, the one October 15, 1903, for seven months, and the other November 15 for six months, which would carry them to May 15, when the lease to Benjamin Futernik expired. Benjamin Switky also makes affidavit that he leased the back part of the premises in this way, and that he conducted a business there, entirely independent of the defendants. W. H. Heiss, the owner of the building, also swears, qualifying an affidavit which he had previously given to the complainants, that while, for a week or two after the fire in October, he saw Futernik and Keen about the store, he. has not seen the latter there since, and the former only occasionally, with his hat and coat on, and not selling goods.

Whatever conclusion might be reached, from the evidence so referred to, with regard to the alleged purchase of "Zon-o-phone" records at the Eighth street store, standing by itself, there would seem to be too much doubt as to the connection of the defendants with the talking machine business carried on at the store on Ninth street to charge them with what happened there, although there is one circumstance, to which I shall allude later on, which might still have the effect of doing so. But since the hearing further evidence has been produced by the complainants, which puts quite another light upon the matter. In an affidavit by Meyer Futernik, the brother of Benjamin Futernik, one of the defendants, made May 21, he states that he is in partnership with his father, Loeb Futernik, in the talking machine and retail tobacco business, at 251 North Ninth street, the store already referred to; that up to March 28, 1904, his father simply conducted a tobacco business there, in the front part of the store, beginning in November previous, during which period, as he says, he was in attendance there, assisting his father two or three hours every day, and was thus familiar with what was going on; that up to the time when his father took over the talking machine business, on March 28, the business was owned and controlled by the defendants, and that after the preliminary injunction was served upon them they moved a large number of "Zon-o-phone" records from the Eighth street store to the store on Ninth street, where they exposed them for sale, additional records of the same kind being brought from the

one place to the other, from time to time, down to the date last mentioned, when they moved all the stock of this character back to the Eighth street store. During this time also, he says, a case of these records was shipped from the Ninth street store to New York City to be sold.

Corroborative of this, Loeb Futernik, the father, in an affidavit made a few days later, testifies that for a year previous to March 28, 1904, when he himself took up the talking machine business at 251 North Ninth street, the defendants owned and controlled the business there; that while in the tobacco business at the same place he frequently assisted them in waiting on customers and selling "Zon-o-phone" records, after Christmas, 1903, and up to March following, the money from the sales so made being taken once or twice a week to the Eighth street store by defendants' representatives; that on January 2, 1904, early in the morning, 12 cases of "Zon-o-phone" records, about 3,000 in all, were brought to the Ninth street store in a wagon, in charge of Jacob Keen, a brother of the two defendants of that name, the wagon being at the store when the affiant got there, and the door being opened by him and the records taken in and exposed for sale, such sales being continued from that time up to the time the defendants moved out for good; that the same day Benjamin Switky was sent there by the defendants for the first time, to take direction of the talking machine business, of which he continued in charge for about three weeks on a salary, after which he went to New York to open a talking machine establishment, and another representative of the defendants was put in his place, a case of the "Zon-o-phone" records being shipped by the defendants to New York, through Switky, early in February, to be sold there; that at sundry times after January 2 parties called and made purchases of "Zon-o-phone" records, and said they had been sent there for that purpose from the Eighth street store. It is explained with regard to the so-called lease from Benjamin Futernik to the father, Loeb Futernik, the affiant, and to Benjamin Switky, that while these are dated October 15, 1903, they were both executed on or about February 18 (which was just as the hearing in the contempt proceedings was coming on), and dated back, Switky having had nothing to do with the store prior to January 2. The affiant took the business, as he says, because the defendants complained that it did not pay, but after it had been arranged that he should do so, a day or two prior to March 28, David Keen objected to his starting in until April 15, up to which time, as he claimed, the defendants had paid the rent, and the place and the business belonged to them. He offered, however, to let them have it sooner if the month's rent which had been advanced was refunded to them, and, this having been agreed to, affiant and his son took possession.

The defendants meet the affidavit of Meyer Futernik with a counter one by David Keen, alleging its entire falsity, in which Morris Keen and Benjamin Futernik, the other defendants, join. They make no response, however, to that of Loeb Futernik, just referred to, which is of a later date, other than as it is contradicted by the

one they had already made. In this they deny that they owned the talking machines and records at the Ninth street store, or that they moved out from there on March 28, as charged, and they reiterate that their connection with the store ceased about the middle of November, when, as they had before stated, Benjamin Futernik sublet to Switky to go into the talking machine business on his own account. It is further averred, but only on information and belief, that during the time Meyer Futernik swears he was in attendance at the Ninth street store he was employed in a tailoring shop, working eight hours a day, and only visited the place occasionally to see his father. This statement runs counter, however, to that of W. H. Heiss, the owner of the building, whose credibility is substantiated by his having been sworn for both sides, who says that a considerable portion of the time after the lease to Benjamin Futernik was made the father and brother of the latter were employed there in connection with the sale of cigars and talking machines, and that at the time of making the affidavit in February they were still so employed, the brother principally attending to the talking machine business, assisted occasionally by the father. John B. Everett also swears to having been in the store several times, shortly before February 19, when his affidavit was taken, and that the business in the rear, consisting of talking machines and records—the latter of which were largely "Zon-o-phone" records—was in charge of the father and brother, who acted as salesmen.

Going back to the Keen affidavit, it is there denied that a large quantity of "Zon-o-phone" records were moved from the Eighth to the Ninth street store after the preliminary injunction, and it is explained that it was Columbian and Victor records that were sold and delivered to Switky from the one place to be sold at the other. It is also denied that a case of records was shipped to New York, and the adverse testimony of the two Futerniks, father and son, is sought to be discredited by the suggestion that on May 15 the defendants started up another store for conducting the talking machine business, at 230 North Ninth street, a few doors distant from the other place, and that when Meyer Futernik heard of this he declared that it would injure his trade, and threatened to make a false (sic) affidavit that the defendants had violated the injunction.

The additional evidence which is brought forward by the complainants in the Futernik affidavits is important, and it cures any weakness which existed in the case without it. Nor is it to be overcome by the insinuation that the Futerniks, father and son, are seeking to injure the defendants because of interference with their trade. There undoubtedly is difficulty between these parties, intimately related by blood and marriage though they are, by reason of the rival stores on Ninth street; but it is more likely to have brought out the truth than to have perverted it. The story that is told clears up and fits in too well with the other facts, which we have, to be rejected. And it is here that the circumstance, to which allusion was made above, comes in. It is clear that all the "Zon-o-phone" records in evidence which were obtained from the

Eighth street store, where the defendants were admittedly in business, as well as those from the Ninth street store, where they try to show that they were not, were part of the lot which were manufactured for the complainants by the Auburn Button Works; these records, according to Mr. Crandall, being the only ones on which the title of the tune or selection is impressed in white letters, by which fact they are at once distinguished and identified. When, therefore, we consider that 90 cases of these, containing some 15,000 records, were purchased by the defendants from Caesar & Co., while it is not impossible that others from the same source might have got into the hands of parties in Philadelphia and so have turned up at the Ninth street store, it is a significant circumstance, taking into account the intimate relations of the defendants with that place, even on their own showing, that records, of which they possessed so large a quantity, should be found there in such abundance exposed for sale. Even without the testimony of the Futerniks as to how they got there, an adverse inference would be justified from this situation, unexplained; and it requires but little in the face of it to persuade of the entire truth of what they say when they swear that these records were brought in quantity from the one store to the other, and were disposed of by representatives of the defendants there.

Nor am I by any means convinced that sales at the Eighth street store stopped upon the granting of the injunction, or were made from records which had been taken in by inadvertence in exchange. There is too much to the contrary to accept that idea. The mutilation on the face of the records, by which the word "Zon-o-phone" is attempted to be obscured, could not deceive or escape the notice of any one, and particularly of those who were so familiar with the business as the defendants' clerks. What purpose any one should have to serve by scratching these records in this way, except, like the defendants, they were prohibited from dealing in them, it is difficult to see. And the fact that in the face of it the defendants were content to deal in them, and now put forward the lame explanation which they do, to try and escape the effect, only serves the more to fasten upon them the charge of having made deliberate and evasive sales. Satisfied, as I am, that the defendants are responsible for what was done at both stores, and that, at both, sales of the complainants' records were made with their knowledge and connivance, after the injunction and in violation of it, I am compelled to hold that there has been a contempt of the order of the court, and that it should be punished by a substantial fine.

Let a decree be drawn adjudging the defendants in contempt, and imposing a fine of $300, with costs.